MARÍA HORTENSIA DÍAZ-MOLINARI ET AL., Petitioners and Appellants, *v.* MANUEL CIVIDANES-ALONSO, Respondent and Appellant.

Nos. 3990, 3998 and 3992. Argued January 25, 1927.—Decided July 26, 1927.

*Jacinto Texidor* for Hortensia and María Esperanza Díaz Molinari. *Francisco Parra Capó* for Ramón Pastor Díaz. *Luis Muñoz Morales* for Manuel Cividanes Alonso.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

The first appeals were heard on January 25, 1927. The hearing on the third appeal was set for May 3, 1927, and the parties submitted the case on briefs. The three appeals were taken from a single order and three different transcripts were brought up where only one would have been sufficient. We shall consider the three cases in a single opinion.

It appears from the record that the first husband of Rufina Molinari y Sánchez was Ignacio Díaz Joylar. Her husband died on December 5, 1893, leaving three children born of that marriage. They are petitioners María Hortensia, María Esperanza and Ramón Pastor Díaz y Molinari.

According to the partition made upon the death of the husband appearing in a public deed dated January 27, 1896, properties valued at $172,535.61 were allotted to the widow in full ownership.

On June 7, 1896, Rufina contracted a second marriage with Manuel Cividanes Alonso, the respondent herein. She died intestate on July 3, 1914, without leaving issue by her second marriage. On the 14th of the following August the District Court of Guayama declared her three children by her first marriage and the widower to be her universal heirs.

After several incidents and for the purpose of making a final liquidation and partition of her estate the district court appointed Francisco Socorro as partitioner. He submitted his report and the court rejected it in an order dated April 19, 1923, and by which Salvador Mestre was appointed as partitioner. On the 27th of the following July the interested parties agreed to formalize and protocol the partition themselves, promising to do so within ninety days. They failed to fulfill their promise and on May 20, 1925, the court again appointed Salvador Mestre as partitioner. He acted and made two reports. The court set April 5, 1926, for hearing the parties and they were heard. They all objected to the reports.

On the 3rd of the following May the court rendered the decision appealed from, overruling the objections and approving the reports of the partitioner.

In the brief of appellants María Hortensia and María Esperanza Díaz twelve errors are assigned, in that of Pastor Díaz two and in that of Manuel Cividanes four.

We shall begin by considering the first error assigned by Pastor Díaz because the general question treated of therein affects the position assumed by appellants María Hortensia and María Esperanza in the first eleven assignments of their brief. We shall take up later those eleven assignments and the twelfth, which is exactly similar to the second assignment of Pastor Díaz. Then we shall consider the appeal of respondent Cividanes, leaving until the last the first of his assignments, which indeed is the one raising the most important question involved in this case.

It is contended that the district court erred in approving the reports of partitioner Mestre because they ignore the ruling of the same court of April 19, 1923. It is alleged in short that that ruling of April 19, 1923, has the authority of *res judicata.*

No jurisprudence whatever is cited, nor is any solid

argument submitted in support of the assignment of error. In our opinion it is evident that the ruling referred to can not have the authority of *res judicata*. It was made in the course of a proceeding, and although it is a fact that in refusing to approve the report of partitioner Socorro he stated therein his opinion on certain questions of fact and of law, it is also true that the judge included in it his appointment of a new partitioner "with all the prerogatives and duties imposed on him by sections 67 to 79 of the Special Legal Proceedings Act and sections 1018 to 1054 of the Civil Code, in so far as they are applicable, it being the duty of the partitioner after accepting the appointment and taking the oath, to take up his duties within ninety days . . ."

On the strength of his appointment and the law partitioner Mestre began to act and after an investigation and a hearing of the parties he made a report to the court according to his best judgment which in many details differed from the opinion expressed by the court in the said ruling of April 19, 1923. It was then the duty of the court to study again the facts of the case and the law applicable thereto and this it did. It was not bound to follow its previous opinion if it became convinced, as it did, that it was erroneous on certain points. It was the court's last opportunity and it was required to act with its mind fully open to any just decision.

Hence, the assignment of error is without merit. What is important is not whether the court decided this or that way in 1923, but whether its final decision conforms to the facts and the law.

The first assignment of appellants María Hortensia and María Esperanza Díaz is that the petitioner and the court erred in not fixing the increase in value of the properties of Rufina under the management of Fernando Calimano about the year 1896.

In the third hypothesis of the report of partition submitted

by partitioner Mestre he states that "it is said" that the properties increased in value under the said management, and nothing more. This means that the statement was not proved in the clear and concrete manner required so that the increase might be taken into consideration.

In arguing the assignment the appellants only invoke the opinion held by the district court in 1923 favorable to the increase. No reference is made to evidence showing such increase. Under these circumstances we do not feel obliged to analyze the evidence that may exist in regard to that particular. The presumption that the last decision of the court was just has not been destroyed by those on whom lay the burden to do so and therefore it can not be held that it was erroneous.

We must reach the same conclusion with respect to the assignments of error numbered 3, 5, 6, 7, 8, 9, 10 and 11, referring to failure to include in the inventory the sum of $25,000 the liquidated balance of a partnership with José María Moreno and his partners; to a decrease in the value of the property brought by Rufina into the community by the exchange of provincial into American money; to a like reduction in the value of the cattle delivered by manager Calimano; to the admission as established that during the existence of the conjugal partnership improvements were made on the Las Pozas property in the amount of $1,800 and repairs made to the house on Ashford Street, Guayama; to the failure to include in the inventory the value of 2,800 sacks of sugar from the 1913–14 crop harvested a few days before the death of Rufina; to the imposition on appellant María Esperanza Díaz the collation of $526.40, the value of presents made to her on the occasion of her marriage, and to charging to the account of María Hortensia Díaz the sums received by her as loans subsequent to the death of Rufina.

And we are forced to the same decision because all of the argument is based also on the fact that the conclusions of the

partitioner, approved by the court, are contrary to the opinion of the court delivered in its former ruling of April 19, 1923, and not on an analysis of. the evidence. introduced, of the concurring circumstances and of the law applicable.

By the second assignment of error of the said appellants it is contended that the court should not have given its approval to the fourth assumption of the account of partition in which it is stated that upon her second marriage to Cividanes Rufina preserved the management of her properties until July 8, 1901, when she surrendered it to her husband by giving him power of attorney executed before a notary public.

We are not of that opinion. The properties referred to were the paraphernal property of Rufina when she contracted her second marriage under the provisions of the old Civil Code, and according to section 1384 of that Code the wife has the management of such property unless she surrenders it to her husband by notarial deed for his management.

The appellants invoke the authority of Manresa who, in commenting on the said section 1384 of the Civil Code, says in part:

"Management of paraphernal property when it is neither reserved by the wife nor delivered to the husband.—Between the two perfectly clear and defined situations specified in the Code, the management of the paraphernal property by the wife, or delivery thereof by public deed to the husband for its management, there is an intermediate situation, perhaps the most common, for which the law has made no definite provision. The wife either brings property into the marriage or acquires it during the marriage and allows her husband to manage it. There is no constitution of dowry and there is no formal delivery before a notary, because all that presupposes formalities which though useful entail expenses and inconveniences. The property is of course paraphernal. The husband is not under the obligation to create a mortgage nor under those derived from considering such property as an unappraised dowry. What is the juridical relation created as between the spouses and as regards third parties?

"The situation to which we refer can only mean really a general administration or power of attorney conferred by the wife on her husband regarding her property, which necessarily must be governed in every particular by the general rules of the mandate.

"This situation enables the husband in practice, notwithstanding the provisions of section 1383, to carry out certain acts on his own initiative or even to execute certain actions as administrator in regard to paraphernal property, which acts or actions must be considered valid within their limits as derived from the mandate, though proof thereof must be required, because in the absence of justification in that particular the rule to be followed is that of the aforesaid section 1383. The husband should act with the consent of the wife.

"In effect, the contract of mandate is included among those permitted as between husband and wife, and just as a wife may give power of attorney to third persons, appointing one or several administrators, for a better reason she may and should in such cases give power to her husband, or place in his hands the management of her paraphernal property, and in such case there is no justification for applying other rules than those which are natural and fitting, since there is no room for applying the rules relating to the administration of unappraised dowries in accordance with the legal requirements." 9 Manresa, Commentaries on the Civil Code, 499.

It is not concluded from the words of Manresa that it should be presumed that immediately upon contracting marriage in all cases the husband takes charge of the management of the paraphernal properties of the wife. The law is that the wife continues to manage her property and if it is true that in the majority of cases the situation of facts referred to by the commentator exists, some proof is always necessary and it seems to us that the partitioner and the court acted prudently in taking the date of the granting of the power of attorney as the starting point. If the appellants knew that the husband had taken charge of the management before that time, they should have shown it to the partitioner and to the court.

It is contended in the fourth assignment of error that the

court should not have allowed partitioner Mestre to use as a basis the inventory prepared by partitioner Socorro.

Partitioner Mestre satisfactorily explains the procedure followed by him. There was already an inventory and appraisal prepared by the former partitioner with the appearance and intervention of the parties in interest. Using it as a basis he heard the parties again and after considering it as a whole finally set forth his conclusions.

We do not see that the procedure followed was erroneous. It was logical that he should make use of the available parts of the previous work. The question before the court was whether or not the final conclusions were supported by the facts and the law.

The twelfth error assigned by the appellants, which, as said before, is the same as the second assignment made by appellant Pastor Díaz, raises the following question: In paying the widower his share of the liquidated inheritance from his consort and of the conjugal partnership which had been constituted between them, can there be assigned to him real property from that brought in by the wife as her separate property?

During the wedlock of Rufina with Cividanes the property had a considerable increase. Its value, according to the inventory, amounted to $311,855.61 American gold. Of that $191,803.99 was community property. The share of the widower amounted to $119,141.28 and the respective shares of the three children to $61,971.44 each.

There is nothing in the law to prohibit assigning to the widower in the final allotment some of the real property brought in by the wife. The appellants invoke section 1028 of the Civil Code which provides that in the division of the estate all possible fairness shall be observed by drawing lots or awarding to each one of the coheirs things of the same nature, quality, or kind. But it seems that this rule was indeed the one that the partitioner endeavored to follow

in acting as he did. The children can not complain. They receive much more than was brought by their mother to the second marriage and they also were awarded some of the original separate property. If the community property of the widower amounted to $95,901.99, that of the mother amounted to a like sum, increasing the estate to $209,153.61, American gold, while the amount brought to the marriage was $172,533.61, provincial money, equivalent to $113,251.62, American gold.

The appellants cite no jurisprudence in arguing the assignment, nor do they show that they have suffered any appreciable injury.

Having considered all of the foregoing, the conclusion is reached that the appeals taken by María Hortencia and María Esperanza Díaz and by Ramón Pastor Díaz should be dismissed. Let us examine the appeal taken by respondent Cividanes, following the plan outlined by us at the outset, that is, by examining first the second, then the third, then the fourth and lastly the first of the assignments of error.

It is complained by the widower that neither the partitioner nor the court recognizes as a debt in favor of the heirs of Rufina Molinari the sum of $56,654.56 disposed of by the "Succession of Ignacio Díaz."

That amount has some connection with the returns from the 1915–1916 crop. The partitioner in referring to it says:

"Nor is it proper to include, as requested by Cividanes, the proceeds from the crop from the plantation Merced ground during the administration of the Acting Judicial Administrator Rafael Palés Díaz in the central Machete in the 1915–1916 grinding season. The proceeds from that crop amounting to $39,776.22 were included by the former partitioner, together with $18,316.80, in the inventory prepared by Socorro under number 37, and it must be observed that the partitioner committed an error in figures giving as the result of adding the two above items the sum of $59,721.16 instead of $58,316.80.

＊　　＊　　＊　　＊　　＊　　＊　　＊

"At the termination of the usufruct by the death of Rufina the lands of the plantation Merced became *ipso facto* the property in full ownership of the naked owners.

"At that moment and by the extinction of the usufruct the plantation passed in full ownership to those who up to that moment had been naked owners, together with the ungathered fruits, the usufructuary of her estate being entitled only to the refund of the ordinary cost of cultivation, sowing and other expenses of the same nature incurred by her until the termination of the usufruct. (Section 472 of the Civil Code.) Puigdollers v. Monroig, 14 P.R.R. 195.

\*　　\*　　\*　　\*　　\*　　\*　　\*

"Now, we have thought it right to include in the inventory the sums disbursed by the administrator Palés for the planting, cultivation and grinding of the 1915–1916 crop for the benefit of the estate of Ignacio Díaz of which he was also the administrator and amounting to $18,540.58 as a debt of the estate of Ignacio Díaz in favor of the estate of Rufina Molinari, and we have so recorded under number 29 of our inventory, to which amount has been brought down the sum of $59,721.02 which appeared in the former inventory."

A reading of the foregoing is sufficient for the conclusion that the district court did not commit error in approving in this particular the report of the partitioner. The conjugal partnership terminated upon the death of the wife and the widower could not continue participating in the benefits therefrom.

The widower also complains of the erroneous inclusion as separate property of property of Rufina which had not been formally delivered to him and which had disappeared when he began the legal management of the community property.

This assignment is related to the second assignment of appellants María Hortensia and María Esperanza Díaz. We think that in view of the concurring circumstances and of our statements in analyzing the said second assignment, it has not been shown that the report of the partitioner approved by the court was not correct.

Although it does not appear that the separate property had been formally delivered for its management to the

husband Cividanes, as should have been done, it is a fact that the year 1901, when the power of attorney was given, had been taken as a basis, and that it seems natural that all of the property had been delivered. If some of the property could not be delivered because it had disappeared, it was incumbent upon Cividanes to prove it in such a manner as to convince the partitioner and the court, and this he failed to do.

The widower likewise complains that the court had assigned the sum of $6,800 for the expenses of the partition. He contends that the partitioner has not submitted the bill for his fees and that the sum reserved is exorbitant.

Perhaps he is right, but the court has not yet used its discretion and we must presume that it will do so in a proper manner and that it will authorize the payment of such items as are shown to be just. If there is anything left, the court will distribute it among the heirs in accordance with the *pro rata* rule specified in the partition.

We come at last to the first assignment of error. It reads as follows:

"The District Court of Guayama committed error. . . in approving the report of the Partitioner. . . , in so far as it applies, in order to establish a usufructuary quota, an erroneous basis contrary to law and prejudicial to the rights of the surviving spouse."

Mrs. Molinari died in 1914. Therefore the law applicable is Act No. 73 of 1911, section 2, reading as follows:

"That Section 8 of an Act entitled 'An Act to amend and repeal Articles 795, 796, 797, 801, 811, 812, 815, 821, 822, 823, and 824 of the Civil Code now in force,' approved March 9, 1905, be and is hereby amended so as to read as follows:

" 'Section 8.—The widower or widow who, on the death of his or her spouse is not divorced, or should be divorced through the fault of the deceased spouse, shall have a right to a portion in usufruct equal to that corresponding by way of legal portion to each of the legitimate children or descendants who have not received any additional portion.

" 'If only one legitimate child or descendant shall survive the widower or widow shall have the usufruct of that third which is authorized by law to be applied to additional portions, the former preserving the naked ownership until, on the death of the surviving spouse, the full title is merged in him.

" 'If the spouses are separated by a suit for divorce, the result of the suit shall be awaited.

" 'The provisions of this section and of the subsequent sections 9, 10, 11, 12 and 13 of this Act, shall apply in like manner to the intestate as well as to the testate succession.' ''   Acts of 1911, p. 236.

The Act of 1905 in regard to forced heirs, section 9, provides:

"The hereditary portion allotted in usufruct to the surviving spouse must be taken from that part of the estate which the testator is permitted by law to apply to additional portions."   Comp. 1911, sec. 3881.

Section 794 of the Revised Civil Code reads as follows:

"A legal portion is that part of the property which the testator can not dispose of because the law has reserved it for specified heirs, called, on that account, heirs by force of law."

Act of 1905 in regard to forced heirs in its section 2 provides:

"The legal portion of legitimate children and descendants is composed of two-thirds of the hereditary estate of the father and of the mother.

"Nevertheless, the latter may dispose of one of the two-thirds forming the legal portion in order to apply it as an additional portion to their legitimate children and descendants.

"The remaining third shall be at their free disposal."  Comp. 1911, sec. 3874.

The foregoing statutes are not only equivalent but equal, respectively, to sections 834, 835, 806 and 808 of the Spanish Civil Code which was in force in Porto Rico from 1889 until 1902 when it was superseded by the Revised Civil Code.   A difference is only noticeable between the last paragraph of section 2 of Act No. 73 of 1911 and section 834 of the old

Civil Code, but this difference does not affect in any way the solution of the problem stated. We mention the similarity of the statutes governing the present case to those of the old Code because we shall make reference to the opinions of the Spanish commentators in order to construe them, for, as contended by the learned counsel for both parties, there is no jurisprudence on the matter established by the Supreme Court of Spain or by this Supreme Court.

How was the law applied by the partitioner to the facts of the case? We will transcribe his own words, as follows:

"The hereditary estate of Rufina Molinari y Sánchez is made up of $113,251.62 as separate property and of $95,901.99 which was her share in the liquidation of acquets, making a total of $209,153.61.

"Of that sum Manuel Cividanes y Alonso is entitled to a usufructuary quota equal to that corresponding by way of legal portion to each of the legitimate children or descendants not favored with any additional portion.

"In order to compute the amount of such usufructuary quota the inheritance is divided into the three thirds which constitute it, that is, the legal portion, the additional portion and that of free disposal, in order to ascertain in this way the amount of the third of the legal portion and so be able to establish the amount of the usufructuary quota. The hereditary estate amounts to $209,153.61 which divided into three thirds gives as the amount of each third the sum of $69,317.87.

"The usufructuary quota being, as already stated, a portion equal to that corresponding to each of the legitimate children or descendants not favored with any additional portion, we shall have to subdivide the short or forced legal portion into three equal parts because three is the number of legitimate children or descendants of the testator and therefore each one of them is entitled to the sum of $23,239.29 and therefore the usufructuary quota of the widower Manuel Cividanes y Alonso amounts to an equal sum which shall be deducted from the third of free disposal as there are other heirs with an interest in the estate as children of the testator by a former marriage."

The appellant contends that the court erred in approving the report, because it ought to have taken as a basis the long

and not the short legal portion. The appellees assert that the court below was right.

There does not exist, as stated, any jurisprudence on the matter either from the Supreme Court of Spain or from that of Porto Rico. On the other hand we have met very rarely with such divergence of opinions among the Spanish commentators on the Civil Code.

The question to be decided embraces the determination of two starting points, *i. e.*, which should be the dividend and which the divisor.

There are three theories in respect to the dividend: One which adopts as such the maximum, that is, the whole hereditary estate; one which adopts a mean or variable one, that is, the long legal portion after deduction is made of the additional portions granted by the testator, and one which takes as a basis the minimum, that is, the third of the estate which constitutes the short or forced legal portion.

The first theory has very few supporters and it is apparent that it lacks solid ground; the second theory is upheld by Manresa and Scaevola, and the third is supported by Morell, López R. Gómez, Frimat, Lecaroz, Lozano Sicilia and others whose points of view are condensed by Scaevola in volume 14 of his Commentaries on the Civil Code, p. 640 *et seq*.

The question has been carefully considered by the court which has finally and unanimously adopted the theory set forth with his usual clearness and soundness by Manresa in volume 6 of his Commentaries on the Civil Code, a theory which, besides, has been followed in practice in Porto Rico, the report of the partitioner in the present case constituting indeed an exception.

Manresa examines the various theories and in dealing with the second one says in part as follows:

"The legal portion is divided among the children and the sur-

viving spouse, provided the forced portion of the former is not · prejudiced.

"The following are the grounds supporting that opinion which we follow:

"It was provided in the *Fuero Juzgo*, law 15, title 3, book 4, that the mother, after the death of her husband, was bound to share with her children all the fruits of the estate 'of her husband during her lifetime.

"It is provided in sections 753 to 812 of the Italian Civil Code that the surviving spouse, together with the legitimate children or descendants, is entitled to the usufruct 'of a portion equal to that corresponding to each child as legal portion, the spouse being also included in the number of children.

"That García Goyena had this in mind in wording the basis and that it was in that sense approved by the Code Commission is proved by the phrases used by him in support of his bill, as is set forth by Alonso Martínez in his remarkable work The Civil Code in its relations to the statutory legislation.

"It is so confirmed by section 834 in requiring that the quota of the surviving spouse be *equal* to the legal portion which corresponds, must be received, as stated in base 17, or should be assigned to each of the children not favored with an additional portion.

"What the legal portion of the children should be is clearly stated in section 808, without having to refer to the bases, because, even supposing that they were in conflict with the sections of the Code, there is no doubt that what has legal force, what must be construed and applied, is the Code and not its bases, which Code was approved by Parliament, and after all, if the bases are somewhat modified thereby, the modification must be accepted.

"The legal portion of the children referred to in section 834 must be, therefore, that established in general by section 808; the two-thirds of the inheritance.

"But the additional portions expressly granted by the testator must be taken into account. The additional portions change the equality among the children. Must the quota of the surviving spouse be fixed without taking into account the additional portions? On the contrary, it must be fixed by taking them into account so as not to consider them legal portions. The surviving spouse shall not receive as much as the child favored with an additional portion, but a quota equal to that of the child not favored with an additional portion to that 'of the child receiving the smallest portion. It is so expressly provided in section 834, and for a compliance therewith

. it becomes necessary always to set apart the portion expressly reserved by the parent for additional portions and not to consider as legal portion the remainder which must be the third of the strict legal portion plus the share of the other third not applied to additional portions by the testator.

"Now, the equality required by section 834 can only be obtained by distributing the legal portion, that is, the two-thirds of the inheritance, if no additional portions are granted, among the children and the surviving spouse, that is, by considering the surviving spouse as another child." Manresa, Commentaries on the Civil Code, 508.

And later in setting forth and attacking the third theory he says:

"Those holding this opinion argue as follows: According to bases 16 and 17 the doctrine of the Code in section 834 appears clear and evident. The quota of the surviving spouse, according to base 17, must equal that corresponding as legal portion to each one of the children. The legal portion of the children according to base 16, is a third of the inheritance and never more than a third. Dividing, therefore, this third among the number of children we get the quota corresponding to each child as legal portion, and the quota of the surviving spouse which must be the same is determined. According to the bases there is not the shadow of a doubt in regard to this point.

"When the Code by its section 834 gave life to base 17 it was faced with the doctrine of section 808 which provides that the legal portion of the children is constituted by two-thirds of the inheritance, and although the same section clearly distinguishes and separates the independent nature of each of the two-thirds, which are amalgamated and called *legal portion,* it was feared that it might be understood, should the base be fully respected, that the legal portion referred to in section 834 was the long legal portion constituted by the two-thirds, and the words *not favored with an additional portion* was added so as to make it clear that exclusion should be made of the third of the additional portion. The addition has not been a happy one, and its improper wording has given rise to doubts which require elucidation.

"However, since such doubts exist and it is thus plainly shown by the different constructions given by the commentators to section 834, the bases 16 and 17 must be taken seriously into account in order

to solve them, because if the legal text, even going beyond limits, deserves in fact to be given preference over the bases, the latter will always be a very important element of construction.

"The same idea pervades the Code and the bases. One-third of the estate of whose disposal the testator deprives himself absolutely; another third which he is allowed to dispose of absolutely; and lastly another third which he is allowed to dispose of with certain limitations, or which he is prohibited from using outside certain limits. Absolute prohibition; absolute liberty; relative liberty and prohibition. Here we have the nature of the three thirds. They infer therefrom that the third for additional portions is not properly speaking legal portion, notwithstanding the mandatory provisions of section 808, supported by section 823, granting that the liberty, even limited, which is allowed the parent to dispose of such third, does not fit in section 806 which defines the legal portion, and that the share thereof corresponding to the children not expressly favored with an additional portion owe their share in the first place to the tacit will of the testator who did not dispose of the whole of that third while entitled to do so, although in the second place they owe it to the law.

"From these and other less important grounds which show a subtle mind in the construction of the law in a sense contrary to its letter, the supporters of that theory infer that the child not favored with an additional portion is the one who receives no share of the third for additional portions and therefore the legal portion referred to in section 834, in conformity with the bases, is the short or strict legal portion, always one-third, *and the quota of the surviving spouse should be equal to the portion from that third corresponding to each* child, without counting or taking into account at all the portion corresponding to the children from the third for additional portions.

"There is no doubt that this system is the simplest: The operation would be easily made, in every case, by dividing evenly among the children only one-third of the inheritance and giving the usufruct to the surviving spouse of a quota equal to that corresponding to each child, taking it from the third for additional portions or from that of free disposal, according to the case; but in our opinion it can not be accepted or followed as being contrary in the letter and in spirit to the provisions of the Code.

"The bases 16 and 17 from those approved by the Act of May 11, 1888, would support this solution if they could be considered as statutory law. But, when embodying them into the Code it was

realized no determination was made as to the use to be given to the third for additional portions, in case the father or mother failed to avail themselves of their right to grant additional portions. The Code commission judged that it should accrue to the legal portion of the children, following the tradition of our old law, which must have been the meaning of base 16, and accordingly section 808 was worded and approved providing that the legal portion of the legitimate children or descendants would be constituted by two-thirds from the hereditary estate of the father and the mother, the latter, however, being empowered to dispose of one of those two-thirds to be given as additional portions to their legitimate children or descendants. Conformable to that spirit were worded sections 806 and 823 defining the *legal portion* and the *additional portion*. Once the Code became law its provisions and not the bases must be complied with whatever the construction given to the latter.

"Therefore, there is no legal portion for the children other than that provided in section 808; the two-thirds of the hereditary estate after deducting the additional portions if any were given. This is the legal portion necessarily referred to in section 834, and the surviving spouse should be given the usufruct of a quota equal to that corresponding accordingly to each child not favored with an additional portion. This is what the law commands, and we hold as arbitrary and illegal any other procedure. Thus is fulfilled also the aim of the reform for equalizing as far as possible the social status of the surviving spouse and the children." 6 Manresa, Commentaries on the Civil Code, 513 to 516.

No further reasoning is needed. As to this point the juridical situation in Porto Rico is the same as when Manresa wrote his commentaries and they contain all that we might say in support of the doctrine that we adopt.

There are also contrary opinions in regard to the divisor. Should the third theory prevail the logical consequence would be that the divisor would be constituted by the children only; but as the second theory has been adopted it follows that the divisor shall be formed by the children and the surviving spouse. Let us suppose, for example, a case like the one before us, where there are no betterments. If the two-thirds of the estate be divided first among the children only, the divisible total would be absorbed and no compliance could

be had with section 9 of the Act of 1905 in regard to forced heirs which provides that the hereditary portion allotted in usufruct to the surviving spouse must be taken from that part of the estate which the testator is permitted by law to apply to additional portions. In order to give to the surviving spouse a share equal to that of each child there is no other way, as contended by Manresa, than to take something from each child.

Therefore, it must be concluded that the standard applied by the partitioner was erroneous not only in selecting the dividend but the divisor as well. The appellant complains only of the selection of the dividend, but if the decision is reversed it must be done so as to make it conform entirely to the law as it has been construed.

It seems proper to say also that the petitioner applied improperly the rule contained in section 13 of the Act of 1905 in regard to forced heirs, Comp. 1911, sec. 3881, equivalent to section 839 of the Old Civil Code, which provides that where the surviving spouse concurs as heir with children from two or more marriages his quota must be taken from the third of free disposal. In the present case there had been indeed two marriages, but the children with whom the surviving spouse concurs are from one marriage only. In this respect it was held by the Supreme Court of Spain in a judgment of February 21, 1900, 89 *Jurisprudencia Civil*, 236, 254, as follows:

"In regard to this question the provisions of the Civil Code in regard thereto are categorical, because section 835 establishes as a general rule that the portion allotted in usufruct to the surviving spouse must be taken from the third set apart for additional portions, and section 839 provides, as an exception, that it must be taken from the third of free disposal in case of there being children of two or more marriages, therefore, as in the case of the estate of the marchioness there are no chlidren of two marriages but only the widower with his step-son, it is evident that the quota corresponding to the widowed spouse must be taken from the third for additional portions, the arguments alleging analogy or the principle that iden-

tical reasons produce identical legal rules being of no avail as against statutory provisions so clear and mandatory as those contained in the foregoing sections, and in order to bring under the exception, which must be construed strictly, cases which not being included therein fall entirely within the general rule.''

By virtue of the foregoing the decision appealed from must be reversed in so far as it approved the dividend and the divisor adopted by the partitioner in computing the hereditary quota of the surviving spouse and in so far as that quota was taken from the third of free disposal, and affirmed in all other particulars, and the case must be remanded for further proceedings not inconsistent with this opinion.